UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| M.V.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI,<br><br>　　　　　Defendant. | Case No. 20-cv-06620-VKD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 14, 17 |

Plaintiff M.V.[1] appeals a final decision of the Commissioner of Social Security ("Commissioner")[2] denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381, *et seq*. The parties have filed cross-motions for summary judgment. The matter was submitted without oral argument.

The sole issue presented is whether the administrative law judge ("ALJ") erred at step five of the sequential analysis in rejecting M.V.'s allegation that she is illiterate and unable to read or write in English. Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below, the Court grants M.V.'s motion for summary judgment, denies the Commissioner's cross-motion for summary judgment, and remands this

---

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by her initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] Pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as defendant in place of Andrew Saul.

matter for further administrative proceedings consistent with this order.[3]

## I. BACKGROUND

M.V. protectively filed her applications for disability insurance benefits and supplemental security income in October 2018 when she was 51 years old, alleging that she has been disabled and unable to work since December 28, 2015. *See* AR[4] 228-243. Her applications were denied initially and on reconsideration. AR 67-127.

An ALJ held a hearing during which M.V. testified through a Spanish language interpreter. AR 48-66. M.V. stated that the highest grade she completed in school was the ninth grade in Nicaragua and that she did not have any schooling in the United States. AR 53. She previously performed unskilled work as a hand packager, wrapping and packaging sandwiches and other products. AR 54-55, 61.

The ALJ subsequently issued an unfavorable decision on January 13, 2020. AR 22-38. He found that M.V. meets the insured status requirements of the Act through December 31, 2020; that she has not engaged in substantial gainful activity since the December 28, 2015 alleged onset date; and that she has the following severe impairments: "degenerative spine disease; right shoulder adhesive capsulitis with a right shoulder impingement; degenerative joint disease of both knees with sequelae of bilateral arthroscopies; and obesity." AR 24-28. However, the ALJ concluded that M.V. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations. AR 28. The ALJ determined that M.V. has the residual functional capacity ("RFC") to perform less than a full range of light work and is unable to perform any past relevant work. AR 28, 35. Further finding that M.V. "has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964)," and based on her age, work experience and RFC, the ALJ found that M.V. is able to perform jobs that exist in significant numbers in the national economy, such as production assembler, electronic accessories assembler, and cafeteria attendant. AR 35-37.

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 8, 9.

[4] "AR" refers to the certified administrative record lodged with the Court. Dkt. No. 13.

1    Accordingly, the ALJ concluded that M.V. has not been disabled, as defined by the Act, since the

2    alleged onset date of December 28, 2015 through the date of his decision.  AR 37-38.

3          M.V. does not challenge any aspect of the ALJ's evaluation of the medical records or her

4    RFC.  Dkt. No. 14 at 2.  However, she takes issue with his finding that the record is not consistent

5    with her allegation that she is unable to read or write in English and is otherwise illiterate.  AR 36.

6          The Appeals Council denied M.V.'s request for review of the ALJ's decision.  AR 1-9.

7    M.V. then filed the present action seeking judicial review of the decision denying her application

8    for benefits.

9    **II.  LEGAL STANDARD**

10         Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's

11   decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not

12   supported by substantial evidence or if it is based upon the application of improper legal

13   standards.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v.*

14   *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted).  In this context,

15   the term "substantial evidence" means "more than a mere scintilla" but "less than a

16   preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to

17   support a conclusion."  *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148,

18   1154 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by*

19   *regulation on other grounds*; internal quotation marks omitted*); see also Morgan*, 169 F.3d at 599

20   (citation omitted).  When determining whether substantial evidence exists to support the

21   Commissioner's decision, the Court examines the administrative record as a whole, considering

22   adverse as well as supporting evidence.  *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v.*

23   *Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one

24   rational interpretation, the Court must defer to the decision of the Commissioner.  *Ahearn*, 988

25   F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

26   **III.  DISCUSSION**

27         M.V. contends there is insufficient evidence to support the ALJ's rejection of her claim

28   that she is illiterate.  She argues that this is relevant because if she is illiterate, then she would be

3

1  considered disabled under Medical Vocational Guideline ("Grid") Rule 202.09, which directs a
2  finding of disability for individuals between the ages of 50-54, with unskilled or no previous work
3  history, and who are illiterate. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00(d). As such,
4  M.V. requests an award of disability insurance benefits from the date in 2017 when she reached age
5  50.[5] Dkt. No. 14 at 10. Alternatively, M.V. argues that at a minimum, remand is required to allow the
6  ALJ to make a proper finding regarding literacy. *Id.* The Commissioner maintains that the ALJ's
7  findings are supported by substantial evidence.

8  At the fifth and final step of the sequential analysis, the ALJ considers the claimant's RFC
9  and vocational factors such as age, education and past work experience. 20 C.F.R.
10 §§ 404.1520(g), 416.920(g). Educational factors that are considered include literacy and the
11 ability to communicate in English. *Id.* §§ 404.1564(b)(1), (b)(5); 416.964(b)(1), (b)(5). "'A
12 distinction exists between an assessment of literacy and an assessment of the ability to
13 communicate in English.'" *Salinas v. Berryhill*, No. 18-cv-04522-KAW, 2019 WL 4751945, at *6
14 (N.D. Cal. Sept. 30, 2019) (quoting *Calderon v. Astrue*, No. 1:08-cv-1015 GSA, 2009 WL
15 3790008, at *9 (E.D. Cal. Nov. 10, 2009)); *see also George v. Saul*, 837 F. App'x 516, 517 (9th
16 Cir. 2021) (distinguishing between a finding that the claimant can communicate in English and a
17 finding that the claimant is literate). "Illiteracy" is defined as "the inability to read or write," 20
18 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1), and "refers to literacy in English," *Silveira v. Apfel*, 204
19 F.3d 1257, 1261 (9th Cir. 2000) (citing *Chavez v. Dep't of Health and Human Servs.*, 103 F.3d
20 849, 852 (9th Cir. 1996)). The Commissioner "consider[s] someone illiterate if the person cannot
21 read or write a simple message such as instructions or inventory lists even though the person can
22 sign his or her name." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). The ability to "communicate
23 in English" refers to "the ability to speak, read and understand English[.]" 20 C.F.R.
24 §§ 404.1564(b)(5), 416.964(b)(5); *see also Chavez*, 103 F.3d at 852 (same). An ALJ must
25 consider both the claimant's literacy and the claimant's ability to communicate in English in

---

[5] The Commissioner argues that Grid Rule 202.09 would not apply to the period from M.V.'s alleged onset date of December 28, 2015 until she attained the age of 50 in 2017. Dkt. No. 17 at 1 n.1. M.V. does not appear to contend otherwise.

determining whether the claimant can perform work pursuant to the regulations. *Salinas*, 2019 WL 4751945 at \*6; *Calderon*, 2009 WL 3790008 at \*9. The Commissioner bears the burden of establishing that the claimant is literate. *Silveira*, 204 F.3d 1257 at 1261.

M.V. does not dispute that the evidence cited by the ALJ is sufficient to support a reasonable finding that she "at least somewhat has the ability to verbally communicate in English." Dkt. No. 14 at 9. But she maintains that the ALJ improperly rejected her claim that she cannot read or write in English. In dismissing M.V.'s allegations of illiteracy, the ALJ acknowledged that in an August 2018 note, a physician at Fremont Rheumatology remarked that the health history provided by M.V. "was questionable due in part to language barriers and possible secondary gain issues[.]" AR 36 (citing AR 892).[6] The ALJ nevertheless dismissed M.V.'s allegations of illiteracy, explaining that (1) while some records identify Spanish as M.V.'s preferred language, medical treatment records and intake forms often list English as M.V.'s preferred language and do not identify a language barrier or document the need for an interpreter; (2) M.V.'s orthopedic surgeon described M.V. as "English-speaking and Spanish-speaking"; (3) a May 2015 hospital record indicates that M.V. requested and was given a written copy of discharge instructions and verbalized her understanding of the instructions; and (4) M.V.'s informed consent has been obtained via her signature on documents written in English. AR 36 (citing AR 571, 590, 592, 595, 597, 605, 611, 634, 1061-63, 1071).

Viewing the record as a whole, the evidence cited by the ALJ is insufficient to establish that M.V. is able to "read or write a simple message such as instructions or inventory lists," which is how the regulations differentiate between persons who are literate and those who are not. 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). The ALJ cited no evidence indicating that M.V. is able to write in English, and the record evidence is vague regarding her ability to read English. This is particularly so where other documents in the record suggest that M.V. may require assistance with reading or writing in English. M.V.'s disability forms and other reports were completed by her

---

[6] The Commissioner mischaracterizes the record and asserts that the physician reported that M.V. has a "'questionable' language barrier." Dkt. No. 17 at 3. As noted above, the physician's note states that M.V.'s *health history* was questionable, in part, because of language barriers. AR 892.

5

representative or her daughter. *See, e.g.,* AR 225, 263, 285-300, 301-314. The hospital discharge record cited by the ALJ indicates that at the time of discharge, M.V. was "accompanied by other family member" and that the "[a]bove person(s) verbalized understanding of discharge instructions and follow-up care." AR 605. The Commissioner correctly notes that a claim worksheet and disability report indicate that M.V. acknowledged the ability to read English. *See* AR 225, 262. Those same forms, however, indicate that M.V.'s preferred language for reading or speaking is Spanish and that she cannot write more than her name in English. *Id*. While the Commissioner emphasizes that the only Spanish-language materials in the record are standard agency forms and notices, the fact remains that the Social Security Administration did provide M.V. with Spanish-language versions of its documents. *See* AR 7-21, 151-215. Although the Commissioner is correct that there are several other examples of M.V.'s signed English language consent forms beside those cited by the ALJ (*see* AR 128, 130, 219, 221, 981-82, 1056-59), literacy requires the ability to do more than simply sign one's name. *See* 20 C.F.R. § 404.1564(b)(1), 416.964(b)(1). For the reasons discussed above, the record indicates that, at a minimum, M.V. required assistance dealing with the paperwork related to her claim. Moreover, M.V.'s testimony during the administrative hearing regarding her ability to speak English[7] does not clarify the extent of her ability to read or write in English.

In sum, with respect to M.V.'s literacy, the evidence cited by the ALJ and in the record as a whole is vague and does not contain sufficient evidence to support a specific finding regarding M.V.'s literacy.[8] Courts have found similarly vague evidence insufficient to support a finding of

---

[7] At the hearing, the ALJ asked M.V. about her ability to speak English as follows:

    Q: Do you speak English at all?
    A: A little, the basic stuff.
    Q: Enough to watch, say, the news in English?
    A: Yes.

AR 53. He did not inquire about her ability to read or write in English.

[8] The parties each cite matters outside the administrative record to support their respective arguments regarding M.V.'s literacy. M.V. asserts that at least some of her providers are fluent in Spanish and speculates that may be why they noted no language barriers in their treatment records. Dkt. No. 14 at 9 & n.1. The Commissioner argues that M.V.'s allegations of illiteracy are belied by M.V.'s status as a naturalized citizen, which would have required her to demonstrate the ability

United States District Court
Northern District of California

6

literacy. *See, e.g. M.C.B. v. Berryhill*, No. 2:18-cv-00302-SHK, 2018 WL 5906063, at *6 (C.D. Cal. Nov. 9, 2018) ("the ALJ's observation of Plaintiff's testimony that Plaintiff could read and write 'some English,' that Plaintiff obtained a sixth grade education from Mexico, has lived in the United States since 1980, and took about six months of classes to help him learn English, does not establish that Plaintiff could read or write a simple message, such as instructions or inventory lists, such that Plaintiff could be found literate in English."); *Mendoza v. Colvin*, No. 1:15-cv-777-GSA, 2016 WL 6441603, at *5 (E.D. Cal. Oct. 31, 2016) ("The ALJ's reasoning that Plaintiff is literate because he communicated at the hearing without an interpreter and that [he] can read a newspaper 'a little bit' (AR 52), does not establish, for example, that Plaintiff can read or write a simple message such as instructions or inventory lists."). The Commissioner's cited authorities do not compel a contrary conclusion. *See, e.g., Ayhan v. Comm'r Soc. Sec.,* 420 F. App'x 765, 766 (9th Cir. 2011) (noting that plaintiff's claims of illiteracy were never raised before the ALJ and were, in any event, "flatly contradicted by the record, which contains several instances of [plaintiff] writing explanations regarding his condition affirming that he was the individual filling out the forms, and even stating that he could read English."); *Gray v. Comm'r of Soc. Sec.,* 365 F. App'x 60, 63 n.3 (9th Cir. 2010) (concluding that the ALJ's determination that plaintiff had an eleventh-grade "limited" education was supported by substantial evidence, including plaintiff's high school transcript and the fact that she filled out her own application for disability benefits); *Alvarez v. Comm'r of Soc. Sec.,* No. C-02-05871 RMW, 2006 WL 2504925, at *3 (N.D. Cal. Aug. 29, 2006) (affirming the ALJ's decision that the plaintiff had "a marginal education," and stating that even if the ALJ had found the plaintiff illiterate, applicable Grid rules would still direct a finding of "not disabled," given her RFC).

Accordingly, remand for further development of the record on the issue of M.V.'s literacy is appropriate. *See Silveira*, 204 F.3d at 1261-62 (remanding where "[t]he ALJ made no express finding that [the plaintiff] was literate in English, and there is insufficient evidence in the record to

---

to speak, read and write English. Dkt. No. 17 at 4-5. The Court does not find it appropriate to consider either of these arguments. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (the Court "reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

7

1 determine whether or not he is literate in English."); *Cruz v. Colvin*, No. 14-cv-03792-JST, 2015 WL 3413320 (N.D. Cal. May 17, 2015) (same).

## IV. CONCLUSION

Based on the foregoing, M.V.'s motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied, and the Court remands this matter for further administrative proceedings consistent with this order. The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: January 24, 2022

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge

8